**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr (183052)
robert@starrlaw.com
Adam Rose (210880)
adam@starrlaw.com
23622 Calabasas Road, Suite 320
Calabasas, CA 91302
Telephone: (818) 225-9040
Facsimile: (818) 225-9042

Attorneys for Plaintiff
Filiberto Loza Gonzalez

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Filiberto Loza Gonzalez, individually and on behalf of a class of similarly situated individuals,<br><br>            Plaintiff,<br><br>    v.<br><br>General Motors, LLC.<br><br>            Defendant. | ) NO.<br>) CLASS ACTION<br>)<br>) COMPLAINT FOR<br>)<br>) 1. Violations of Business and<br>) Professions Code 17200<br>) 2. Violation of Consumer Legal<br>) Remedies Act<br>)<br>) JURY TRIAL DEMANDED<br>)<br>)<br>)<br>) |

-1-

## INTRODUCTION

1.     Filiberto Loza Gonzalez ("Gonzalez") brings this action for himself and on behalf all persons ("Class Members") who purchased or leased the following vehicles in California, that were first placed into service after January 3, 2019: model year 2019 new model Chevrolet Silverado 1500 vehicles, 2020 Chevrolet Silverado 1500 vehicles, 2020 Chevrolet Silverado 2500 HD vehicles, 2020 Chevrolet 3500HD vehicles, 2019 new model GMC Sierra 1500 vehicles, 2020 GMC Sierra 1500 vehicles, 2020 GMC Sierra 2500 HD vehicles, and 2020 GMC Sierra 3500HD vehicles (collectively referred to as "Class Vehicles") which were manufactured, distributed, and sold by General Motors, LLC, a Delaware Limited Liability Company (GM). GM is sometimes referred to as Defendant.

## PARTIES

**FILIBERTO LOZA GONZALEZ**

2.     Gonzalez resides in California. On or about April 29, 2019, Gonzalez purchased a new 2019 GMC Sierra 1500 truck, VIN 1GTU9BEDXKZ295511 ("Gonzalez Vehicle") from Fresno Buick GMC ("Fresno") located at 5515 North Blackstone Avenue, Fresno, California 93710. Fresno is a GM franchise dealership, authorized by GM to perform warranty repairs and sell GM vehicles. Gonzalez purchased the Gonzalez Vehicle for personal, family, and household use. When Gonzalez purchased the Gonzalez vehicle, the Gonzalez Vehicle was sold as a new vehicle. The transaction took place on or about April of 2019. At the time that the Gonzalez Vehicle was sold, the Gonzalez Vehicle came with a new car warranty.

**Defendant**

3.     GM is a limited liability company, organized and in existence under the laws of the State of Delaware and registered with the Secretary of State to conduct business in California. GM is and at all times herein relevant was engaged in the business of designing, manufacturing, constructing, assembling, marketing,

distributing, and selling automobiles and other motor vehicles and motor vehicle components throughout the United States of America.

## JURISDICTION

4. This is a class action that is subject to the Class Action Fairness Act, and diversity jurisdiction under 28 USC § 1332 since plaintiff is a citizen of California, and GM is incorporated in Delaware, and the amount in controversy exceeds $5,000,000.

5. At all times relevant, Gonzalez resided in the county of Fresno, in the state of California.

6. Gonzalez purchased the Gonzalez Vehicle in the county of Fresno, in the state of California.

7. Due to the Gonzalez Vehicle being purchased in Fresno, California, and due to Gonzalez residing in Fresno, California, jurisdiction is proper in the Eastern District.

## APPLICABLE LAW

8. California State law applies to all claims in this action.

## FACTUAL ALLEGATIONS

9. The Class Vehicles only consist of vehicles sold or leased in California to Class Members.

10. The Class Vehicles are equipped with a defective rear sliding glass windows ("Water Intrusion Defect"). The defect is that the rear sliding glass windows are susceptible to water intrusion. The rear window consists of fixed glass and a sliding glass. The frame of the window is plastic and sealed with a urethane seal.

11. When manufactured, the Class Vehicles were expected to be made with the ability to endure weather consistent with that of a car that would remain

-3-

outdoors all or some of the time, including being exposed to rain and fluctuations in temperature.

12.    Water intrusion is the unwanted entry of water into a vessel, including but not limited to a car, causing damage to its structure, materials, or indoor environment. The rear sliding glass windows installed in the Class Vehicles are and were at the time of assembly and distribution defective, because they were designed and constructed in a defective manner, using substandard materials, making them susceptible to water intrusion.

13.    Water intrusion into the Class Vehicles can cause safety related damage to Class Vehicles, including but not limited to mold growth and electrical failure. Mold growth and electrical failure create a hazardous condition for vehicle occupants. The ingestion of mold can cause physical harm to vehicle occupants. Electrical failure can result in Class Vehicles being unsafe to drive, due to the failures of the electrical and mechanical systems of the Class Vehicles, rendering Class Vehicles unfit for safe operation in the roadway.

14.    For the herein stated reasons, it is critical that GM and other manufacturers design robust rear windows and seals which are not susceptible to water intrusion.

15.    Prior to the sale and lease of the Class Vehicles to the public, GM knew that the Class Vehicles contained a defect which caused water leaking and water intrusion at the rear sliding windows of the Class Vehicles, into the interior occupant cab sections of the Class Vehicles.

16.    On January 3, 2019, GM published Technical Service Bulletin 18-NA-383, identifying a condition where customers may find water in the rear interior of the cabs of the Class Vehicles. At that time, the affected vehicles were identified as 2019 new model Chevrolet Silverado 1500 vehicles and 2019 new model GMC Sierra 1500 vehicles. The bulletin was revised a total of 12 more times, with the

-4-

latest revision being published on March 7, 2023, and identifying the affected vehicles as being all of the Class Vehicles.

17.    Based upon the publication of the January 3, 2019 technical service bulletin, it is obvious that GM knew, dating back to before January 3, 2019, that all of the Class Vehicles had the Water Intrusion Defect. Notwithstanding, GM failed to warn consumers of the Water Intrusion Defect and failed to make changes so as to eliminate the Water Intrusion Defect. Instead GM silently continued to manufacture, distribute, advertise and sell the Class Vehicles, knowing that they were defective, without disclosing the Water Intrusion Defect to consumers.

18.    GM has represented to the public that the Class Vehicles are and were of excellent quality, reliable, and safe. Unfortunately, due to the Water Intrusion Defect, the Class Vehicles were and are not of good quality, not reliable, and not safe. To date, GM has not disclosed the Water Intrusion Defect to consumers, has concealed the Water Intrusion Defect from consumers, and has not made any actual effort to immediately protect consumers from the serious safety problems relating to the Water Intrusion Defect. Furthermore, GM has refused to pay for all of the Class Vehicle repairs, and other damages which have occurred as a result of the Water Intrusion Defect unless the Class Vehicles are presented for repairs during the warranty period. GM has published numerous technical service bulletins, advising its dealerships of several symptoms of the Water Intrusion Defect. But GM has willfully, knowingly, and wrongfully failed to disclose the existence of the Water Intrusion Defect to consumers.

19.    On April 2, 2026, at 57,134 miles, Gonzalez brought the Gonzalez Vehicle to Fresno Buick GMC ("Fresno") because he was experiencing water intrusion into the rear cab of his vehicle which he noticed while washing the Gonzalez Vehicle. Fresno verified the water intrusion and performed the work outlined in the most recent version of Technical Service Bulletin 18-NA-383,

however GM refused to pay for repairs. As a result, Gonzalez paid over $1,000.00 for the repairs.

20.   All of the rear sliding window repairs relating to the Gonzalez Vehicle which are referenced herein related to the Water Intrusion Defect as identified in Technical Service Bulletin 18-NA-383.

21.   As previously stated, GM has been aware, predating the manufacture and sale of Class Vehicles, that it designs, assembles, and installs defective rear sliding windows which contain the Water Intrusion Defect. GM even published Technical Service Bulletin 18-NA-383, entitled, "Water Found in Rear Interior of Cab, Water Leak at Rear Sliding Window", specifically relating to the Water Intrusion Defect. The bulletin, and subsequent revisions to the bulletin, references the Class Vehicles. The bulletin, and revisions, describe the condition as, "Customer may comment on finding water in the rear interior of the cab." The bulletin describes the cause as being, "The cause of the condition may be possible cracking in the rear sliding window plastic upper rail glass guide or a leak in the primary urethane seal." The correction is described as, "R & R the roof rear spoiler and apply seam sealer to the rear sliding window top encapsulate, following the steps in the Service Procedure below." GM basically acknowledges that the sliding rear window of the Class Vehicles is defective and susceptible to the Water Intrusion Defect. The bulletin, by virtue of its very existence, and by virtue of the fact that it applies to all of the Class Vehicles, and no other vehicles, is an acknowledgment of a classwide problem relating to the rear sliding window. Notwithstanding, consumers are expected to pay for the repairs, unless the repairs occur during warranty time period.

22.   Gonzalez contends that the condition described in bulletin 18-NA-383 is the same condition that resulted in the repair to the Gonzalez Vehicle at 57,134 miles.

23.    GM widely advertises, publishes, publicizes, and disseminates to the public that the Class Vehicles are both safe and of good quality.

24.    GM has known of the Water Intrusion Defect prior to the manufacture and distribution of the Class Vehicles. GM knew or should have known that the Water Intrusion Defect resulted in the Class Vehicles being defective, not fit for their intended purpose, and unsafe. Nevertheless, GM actively concealed and failed to disclose this defect to Gonzalez and the Class Members at the time of purchase or lease and thereafter.

25.    GM has failed to notify Class Members of the Water Intrusion Defect, placing consumers at risk of suffering injury and financial loss.

26.    It is Gonzalez's information and belief that the Water Intrusion Defect is a pervasive defect affecting every single Class Vehicle and posing a serious safety hazard for the general public.

27.    GM has superior and exclusive knowledge of the Water Intrusion Defect. GM knew that the defect was not known or reasonably discoverable by Gonzalez and Class Members prior to their purchase or lease of the Class Vehicles.

28.    Only GM had access to information about the significant risks associated with the Water Intrusion Defect, through GM's dealerships, pre-release testing data, warranty data, customer complaint data, and replacement part sales data, among other internal sources of aggregate information about the problem.

29.    While GM has been fully aware of the Water Intrusion Defect in the Class Vehicles, GM has actively concealed the existence and nature of the Water Intrusion Defect from Gonzalez and Class Members at the time purchase or sale and thereafter. Specifically, GM has:

    a.    failed to disclose, at and after the time of purchase or lease and repair, any and all known material defects or material nonconformity of the Class Vehicles, including the Water Intrusion Defect;

-7-

b.      failed to disclose at the time of purchase or lease that the Class Vehicles were not in good in working order, were defective, and were not fit for their intended purposes; and

c.      not properly instructed GM authorized repair facilities regarding the true nature of the Water Intrusion Defect, the frequency of the Water Intrusion Defect, and the risks associated with the Water Intrusion Defect.

30.    Gonzalez and Class Members have expended money to make repairs as a result of the Water Intrusion Defect, despite GM's knowledge of the defect.

31.    The Members of the Class have not received the value for which they bargained when they purchased or leased the Class Vehicles.

32.    As a result of the defects, the value of the Class Vehicles has diminished, including without limitation re-sale value.

## TOLLING OF THE STATUTE OF LIMITATIONS

33.    Since the defects in the design or manufacture of the Class Vehicles cannot be detected until the defect manifests itself, Gonzalez and the Class Members were not reasonably able to discover the problem until after purchasing or leasing the Class Vehicles, despite their exercise of due diligence.

34.    Gonzalez and the Class Members had no realistic ability to discern that the Class Vehicles were defective until after Gonzalez and the Class Members experienced the Water Intrusion Defect and learned that the Water Intrusion Defect occurred as a result of a classwide defect known to GM prior to GM distributing the Class Vehicles. In addition, despite their due diligence, Gonzalez and the Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the Class Vehicles had been concealed from them until manifestation of the Water Intrusion Defect. Therefore, the discovery rule is applicable to the claims asserted by Gonzalez and the Class Members.

-8-

35.    GM has known of the defect in the Class Vehicles and has concealed from or failed to alert owners and lessees of the Class Vehicles of the full and complete nature of the Water Intrusion Defect.

36.    Any applicable statute of limitation was tolled by GM's knowledge, active concealment, and denial of the facts alleged herein. GM is further estopped from relying on any statute of limitation because of its concealment of the defective nature of the Class Vehicles.

## CLASS ACTION ALLEGATIONS

37.    Gonzalez brings this lawsuit as a class action on behalf of himself and all other Class Members similarly situated pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

38.    The Class and Sub-Class are defined as:

Class: All Persons in the State of California who purchased or leased a Class Vehicle.

Sub-Class:  All Class Members who are "consumers" within the meaning of California Civil Code § 1761(d). Excluded from the Class and Sub-Classes are: (1) Defendants, any entity or division in which Defendants has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein. Gonzalez reserves the right to amend the Class and Sub-Classes definitions if discovery and further investigation reveal that the Class and Sub-Classes should be expanded or otherwise modified.

-9-

39. Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

40. Typicality: The claims of the representative Gonzalez are typical of the claims of the Class in that the representative Gonzalez, like all Class Members, purchased and/or leased a Class Vehicle designed, manufactured, and distributed by GM. The representative Gonzalez, like all Class Members, has been damaged by Defendants' misconduct in that he has incurred or will incur the cost of repairs relating to the Water Intrusion Defect. Furthermore, the factual bases of GM's misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all Class Members.

41. Commonality: There are numerous questions of law and fact common to Gonzalez and the Class that predominate over any question affecting only individual Class Members. These common legal and factual issues include the following:

a. whether the Class Vehicles suffer from the Water Intrusion Defect;

b. whether the Water Intrusion Defect constitutes an unreasonable safety risk;

c. whether Defendants know about the Water Intrusion Defect and, if so, how long Defendants have known of the defect;

d.   whether the defective nature of the Class Vehicles constitutes a material fact;

e.   whether Defendants have a duty to disclose the defective nature of the Class Vehicles to Gonzalez and Class Members;

f.   whether Gonzalez and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction.

g.   Whether Defendants knew or reasonably should have known of the Water Intrusion Defect in the Class Vehicles before the Class Vehicles were sold or leased them to Class Members;

h.   Whether Defendants should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repair and replacement of the Class Vehicles;

i.   Whether Defendants breached the express terms of the GM warranty by refusing to pay for repairs relating to the Water Intrusion Defect during the term of the warranty;

j.   Whether Defendants concealed and refused to disclose the nature of the Water Intrusion Defect from purchasers and lessees of Class Vehicles at the time of sale and otherwise;

k.   Whether Class Members have suffered loss as a result of the Water Intrusion Defect, and to what extent GM is obligated to compensate the Class Members for any and all losses.

42.   Adequate Representation:  Gonzalez will fairly and adequately protect the interests of the Class Members. Gonzalez has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Gonzalez intends to prosecute this action vigorously.

43.   Predominance and Superiority: Gonzalez and the Class Members have

all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION

Violation of Business & Professions Code § 17200, et seq.

Against All Defendants

44.     Gonzalez hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

45.     Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

46.     Gonzalez and the Class Members are reasonable consumers who do not expect their Class Vehicles to experience the Water Intrusion Defect and who do not expect their Class Vehicles to be susceptible to either the Water Intrusion Defect or the potential dangers associated with the Water Intrusion Defect, which as mold, electrical failure, or mechanical failure. These are reasonable and objective consumer expectations relating to the Class Vehicles.

-12-

47. GM knows and has known that the Class Vehicles suffer from an inherent defect, were defectively designed and manufactured, would experience the Water Intrusion Defect, and were not suitable for their intended use.

48. In failing to disclose the Water Intrusion Defect, GM has knowingly and intentionally concealed material facts and breached its duty not to do so.

49. GM was under a duty to Gonzalez and the Class Members to disclose the defective nature of the Class Vehicles because:

a. GM was in a superior position to know the true state of facts about the Water Intrusion Defect in the Class Vehicles;

b. GM made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles; and,

c. GM actively concealed the defective nature of the Class Vehicles from Gonzalez and the Class Members.

50. The facts concealed and not disclosed by GM to Gonzalez and the Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase the Class Vehicles. Had Gonzalez and other Class Members known that the Class Vehicles had the Water Intrusion Defect, Gonzalez and the Class Members would not have purchased Class Vehicles and would not have paid what was paid for the Class Vehicles.

51. GM continued to conceal the defective nature of the Class Vehicles even after Class Members began to report problems. Indeed, GM continues to cover up and conceal the true nature of the Water Intrusion Defect. GM did not disclose to consumers that the Water Intrusion Defect exists and did not reimburse consumers for all of the costs incurred in connection with the Water Intrusion Defect.

52. GM has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

-13-

53.   The unfair and deceptive acts and practices occurred repeatedly in GM's trade or business and were capable of deceiving a substantial portion of the purchasing public.

54.   As a direct and proximate result of GM's unfair and deceptive practices, Gonzalez and the Class have suffered and will continue to suffer damages.

55.   GM was unjustly enriched and should be required to make restitution to Gonzalez and the Class pursuant to §§ 17203 and 17204 of the Business & Professions Code.

## SECOND CAUSE OF ACTION

Violation of Consumer Legal Remedies Act

Against All Defendants

56.   Gonzalez incorporates by reference the preceding paragraphs of this Complaint.

57.   Civil Code section 1780(a) provides that any consumer who suffers damage as a result of a Consumer Legal Remedies Act violation may bring an action to recover: 1) actual damages, but in no case shall the total award of damages in a class action be less than $1,000, 2) an order enjoining the methods, acts, or practices, 3) restitution of property, 4) punitive damages, and 5) any other relief that the court deems proper.

58.   GM has violation the Consumer Legal Remedies Act by representing that the Class Vehicles had characteristics or benefits which they did not have, in violation of Civil Code Section 1770(a)(5), falsely representing that the Class Vehicles were of a particular standard, quality or grade when they were of another, in violation of Civil Code Section 1770(a)(7), and advertising Class Vehicles with an intent not to sell them as advertised, in violation of Civil Code Section 1770(a)(9).

-14-

59.    Gonzalez gave GM notice of Gonzalez's claims pursuant to the Consumer Legal Remedies Act and requested that GM provide a corrective remedy within the time period allowed by law. GM failed to provide a corrective remedy within the time period allowed by law.

60.    Civil Code section 1781 provides that Gonzalez may pursue this case as a class action.

61.    Gonzalez requests compensatory, actual, incidental and consequential damages.

62.    Gonzalez requests injunctive relief pursuant to Civil Code 1782(d).

63.    Gonzalez is entitled to attorney fees pursuant to Civil Code section 1780(e).

**RELIEF REQUESTED**

64.    Gonzalez, on behalf of himself, and all others similarly situated, requests the Court to enter judgment against Defendants, as follows:

a.    An order certifying the proposed Class and Sub-Classes, designating Gonzalez as named representatives of the Class, and designating the Gonzalez's Counsel as Class Counsel;

b.    A declaration that Defendants are financially responsible for notifying all Class Members about the defective nature of the Class Vehicles;

c.    An order enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles, and to repair the Class Vehicles so that they will no longer possess the Water Intrusion Defect;

d.    An award to Gonzalez and the Class of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

e.   An award to Gonzalez and the Class of any repair costs they are owed and that they incurred;

f.   A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles, or make full restitution to Gonzalez and Class Members;

g.   An award of attorneys' fees and costs, as allowed by law;

h.   An award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

i.   An award of pre-judgment and post-judgment interest;

j.   Leave to amend the Complaint to conform to the evidence produced at trial; and

k.   Other relief as may be appropriate under the circumstances.

Date: June 1, 2026                           The Law Office of Robert L. Starr

By:  /s/ Robert Starr
     Robert Starr
     Attorney for Plaintiff
     Filiberto Loza Gonzalez,
     individually, and on behalf of a class
     of similarly situated individuals

DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial pursuant to Fed. R. Civ. P. 38.

Date: June 1, 2026                           LAW OFFICE OF ROBERT STARR

     /s/ Robert Starr
     Attorney for Plaintiff
     Filiberto Loza Gonzalez

-16-